UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Michael Hope, Joseph Collins, Philip
Eckel, James Harris, and Francesco
Raffa,

                    Plaintiffs,        CV-06-2245 (CPS)

    - against -

                                       MEMORANDUM OPINION
The Board of Trustees of Operative     AND ORDER
Plasterers' and Cement Masons'
International Association Local 530
Welfare Plan,

                    Defendant.

----------------------------------------X

SIFTON, Senior Judge.


     Plaintiffs Michael Hope, Joseph Collins, Philip Eckel, James

Harris, and Francesco Raffa commenced this action on May 16, 2006

against defendant Board of Trustees of Operative Plasterers' and

Cement Masons' International Association Local 530 Welfare Plan

("the Welfare Plan") under the Employee Retirement Income

Security Act ("ERISA"). The complaint alleges that the defendant

improperly terminated the plaintiffs' employment benefits

coverage in violation of the Welfare Plan's terms. Plaintiffs

seek a permanent injunction directing defendant to provide

plaintiffs with coverage until April 1, 2007.

     Presently before the Court are plaintiffs' motion for a

preliminary injunction and defendant's motion for attorney's

fees. For the reasons and upon the findings of fact and

conclusions of law that follow, plaintiffs' motion for a preliminary injunction is denied and defendant's motion for attorney's fees is denied.

## BACKGROUND

What follows sets forth this Court's findings of fact and conclusions of law as required by Federal Rules of Civil Procedure 52(a) and 65. The facts are drawn from the complaint and the parties' submissions in connection with this motion; they are essentially undisputed.

Plaintiffs Michael Hope, Joseph Collins, James Harris, and Philip Eckel are employed by Art In C+3onstruction ("AIC"), located in Brooklyn, New York, as plasterers. Plaintiff Francesco Raffa has been employed as a plasterer by several different companies located in New York City. These individual plaintiffs were participants, as defined by Section 3(7) of ERISA, 29 U.S.C. § 1002(7),[1] of the Welfare Plan. AIC is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5),[2] and Section 2(2) of the Labor-Management Relations Act ("LMRA"), 29

---

[1] "The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."

[2] "The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity."

U.S.C. § 152(2).[3]

Operative Plasterers' and Cement Masons' International Association Local 530 ("Local 530"), headquartered in the Bronx, New York, is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5).[4] The Welfare Plan constitutes a welfare benefit plan under Section 3(3) of ERISA, 29 U.S.C. § 1002(3),[5] and the Board of Trustees of the defendant Welfare Plan is the plan sponsor under Section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B).[6] Carmen Barrasso, who has provided an affidavit in support of defendant's opposition to the instant motion, is the administrator of the Welfare Plan as defined by Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).[7]

---

[3] "The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include...any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization."

[4] "The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

[5] "The term "employee benefit plan" or "plan" means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."

[6] "The term "plan sponsor" means...in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan."

[7] "The term "administrator" means--
(i) the person specifically so designated by the terms of the instrument under which the plan is operated;
(ii) if an administrator is not so designated, the plan sponsor; or
(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe."

In July 2002, AIC signed a collective bargaining agreement
("CBA") with Local 530. AIC paid contributions to the Welfare
Plan fund on behalf of plaintiffs Hope, Harris, Collins, and
Eckel through the pay period ending September 30, 2005.[8] In
November 2005, the plasterers employed by AIC voted to elect
Bricklayers and Allied Craft Workers Local Union No. 1 ("Local
1") as their exclusive bargaining representative instead of Local
530, and on November 8, 2005, the National Labor Relations Board
("NLRB") certified Local 1 as the exclusive bargaining agent for
the plasterers employed by AIC. AIC's obligation to pay
contributions to the plan ceased as of that date. Thereafter, AIC
entered into a CBA with Local 1. Plaintiff Raffa was employed by
Cooper Plastering Corp., a signatory to a CBA with Local 530,
until March 31, 2005, after which point he was not employed by a
Local 530 CBA signatory.

The Welfare Plan provides welfare benefits to members of the
Local 530. Prior to May 1, 2006, the Welfare Plan benefits were
described in the Summary Plan Description dated January 1, 2005
("the 2005 SPD"), and prior to 2005, the plan's benefits were
described in the Summary Plan Description dated January 1, 2003
("the 2003 SPD"). Both the 2003 SPD and the 2005 SPD contained
the following language:

---

[8]AIC made a payment to the fund in December 2005; however, it did not
include the required remittance reports detailing the number of hours worked by
its employees. Accordingly, the Welfare Plan is holding that payment of $5000 in
escrow.

> WHO IS ELIGIBLE FOR COVERAGE UNDER THE WELFARE PLAN?
> All full-time employees covered under the Collective
> Bargaining Agreements of Contributing employers with
> Local 530 Operative Plasterers' and Cement Masons', and
> for whom the employer makes a contribution to the Fund.

The 2003 SPD and 2005 SPD further provided:

> The coverage for yourself and your eligible depends will
> terminate on the day any of the following occur unless
> otherwise noted:
> 1) If you cease to be employed by a contributing
> employer, your eligibility continues to the end of the
> month in which your employment ceases.
> 2) If your employer ceases to be a contributing employer
> (or fails to make necessary contributions on a
> contractual due date), your eligibility continues to the
> end of the month in which your employer's contribution
> ceases.

The 2003 SPD and 2005 SPD also stated:

> Notwithstanding any other provision of this Plan, the
> Board of Trustees is responsible for interpreting the
> Plan and for making determinations under the Plan. In
> order to carry out this responsibility, the Trustees
> shall have exclusive authority and discretion...to amend,
> modify, or discontinue all or part of the Plan whenever,
> in their sole and absolute discretion, conditions so
> warrant.

The Welfare Plan provided future benefits to participants

based on the number of hours worked. Between April 1, 2004 and

March 31, 2005, plaintiff Raffa worked more than 1800 hours under

the Welfare Plan, making him qualified for two consecutive 12-

month blocks of coverage under the plan. By letter dated December

1, 2005, Lisa Bertoncin, the Welfare Plan's Coordinator of

Benefits and Compliance Officer, confirmed Raffa's coverage

through April 1, 2007. Between April 1, 2004 and September 30,

2005, plaintiffs Hope, Harris, Collins, and Eckel worked more

than 1800 hours under the plan, making them qualified for coverage for the period April 1, 2005 to April 1, 2007. On April 10, 2006, Barrasso told plaintiff Hope verbally that the plaintiffs' coverage "[wa]s good until April 2007."

Thereafter, the Board of Trustees of the Welfare Plan issued a Material Modification to the Plan, effective May 1, 2006. The Material Modification provides:

> If you are no longer working for a contributing employer, and are not willing and available to work for a contributing employer, your coverage will terminate on the 1st day of the month following the month in which you stopped working for a contributing employer.
>
> If it is determined that you are working in the Plastering Industry for an Employer who has not signed a Collective Bargaining Agreement with the Union; or if you make an arrangement with an Employer in violation of your Collective Bargaining Agreement's requirement to have contributions made to the Fund based upon your hours worked; or if a false or fraudulent claim is made to the Fund, your coverage will be terminated immediately.

Plaintiffs received notice of the Material Modification in mid-April 2006. In early May 2006, plaintiffs Harris, Eckel, Collins, and Raffa received notices stating that their coverage had been terminated as of May 1, 2006. Plaintiff Hope did not receive such a notice.

Presently before the Court is plaintiffs' motion for a preliminary injunction directing defendant to provide coverage to plaintiffs pending resolution of this lawsuit. Defendant opposes the motion and moves for an award of attorney's fees. For the reasons that follow, plaintiffs' motion for preliminary

injunction is denied and defendant's motion for attorney's fees
is denied.

**DISCUSSION**

<u>Plaintiffs' motion for a preliminary injunction</u>

A preliminary injunction is appropriate if the moving party
demonstrates "(a) irreparable harm, and (b) either (1) a
likelihood of success on the merits, or (2) sufficiently serious
questions going to the merits to make them fair grounds for
litigation and a balance of hardships tipping decidedly in its
favor." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137,
142 (2d Cir.1997).

**Irreparable Harm**

The showing of irreparable harm is the "single most
important prerequisite for the issuance of a preliminary
injunction." *Bell & Howell v. Masel Supply Co.*, 719 F.2d 42, 45
(2d Cir.1983). Irreparable harm must be shown to be imminent, not
remote or speculative, and the injury must be such that it cannot
be fully remedied by monetary damages. *See Tucker Anthony Realty
Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989).

Plaintiffs argue that they will be irreparably harmed should
this Court deny the motion for preliminary injunction because
they and their families will cease to receive employee benefits.
Defendants argue that there is no irreparable harm because
plaintiffs can obtain coverage through Local 1, or they can

obtain continued coverage under the Consolidated Omnibus Budget
Reconciliation Act ("COBRA"). Plaintiffs counter that the
benefits of the Local 1 coverage for which they are eligible are
less rich than those provided for by the Local 530 Welfare Plan.
Moreover, they assert that they cannot afford the COBRA payments.
However, even assuming, without deciding, that plaintiffs would
suffer irreparable harm, I conclude that the preliminary
injunction must be denied because they have not demonstrated a
likelihood of success on the merits or the existence of
sufficiently serious questions going to the merits. Accordingly,
I need not decide this issue.

**Likelihood of success on the merits and sufficiently serious
questions going to the merits**

Plaintiffs allege that the Material Modification, which
stated that participants must work for contributing employers in
order to continue to be eligible for benefits under the plan,
violated the terms of the plan. However, as defendants point out,
both the 2003 SPD and 2005 SPD explicitly provided for
termination of benefits if a participant ceased to be employed by
a contributing employer. Accordingly, the Material Modification
was not only consistent with the plan, it was unnecessary.

Moreover, as the Second Circuit Court of Appeals has held,
"the benefits provided by a welfare plan generally are not vested
and an employer can amend or terminate a welfare plan at any
time." *American Federation of Grain Millers, AFL-CIO v.*

*International Multifoods Corp.,* 116 F.3d 976, 979 (2d Cir.1997).

The Court has explained the reason for this rule as follows:

> With regard to an employer's right to change medical plans, Congress evidenced its recognition of the need for flexibility in rejecting the automatic vesting of welfare plans. Automatic vesting was rejected because the costs of such plans are subject to fluctuating and unpredictable variables.

*Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988). The Court stated that "if a document unambiguously indicates whether...medical benefits are vested, the unambiguous language should be enforced." *Multifoods*, 116 F.3d at 980. Here, as in *Multifoods*, the language of the SPDs is unambiguous: "If [an employee] cease[s] to be employed by a contributing employer, [his] eligibility continues to the end of the month in which [his] employment ceases." Accordingly, the plan was not obligated to continue providing benefits once the plaintiffs' ceased working for contributing employers.

Plaintiffs' only response to these arguments is to argue that defendant waived the requirement that a participant be employed by a contributing employer by continuing to provide benefits to plaintiffs for several months after their benefits should have been terminated under the terms of the plan. However the *Multifoods* Court rejected a similar argument:

> Plaintiffs also attempt to rely on extrinsic evidence, pointing out that for a time after the CBAs expired, Multifoods continued to pay the entire premium required to provide medical insurance to its retirees. Plaintiffs contend that this indicates that Multifoods promised

vested benefits to its retirees. *See Bower v. Bunker Hill Co.*, 725 F.2d 1221, 1225 (9th Cir.1984) (holding that if an employer provides benefits to its retirees while a CBA is not in effect, that fact constitutes extrinsic evidence that the retiree benefits promised in that CBA are vested). However, while extrinsic evidence can be used to interpret ambiguous CBAs, *see UMW v. LTV Steel Co. ( In re Chateaugay Corp.)*, 891 F.2d 1034, 1038 (2d Cir.1989), extrinsic evidence cannot alter the meaning of unambiguous terms, *see Vulcan Arbor Hill Corp. v. Reich*, 81 F.3d 1110, 1117 (D.C.Cir.1996). Here, the terms of the CBA unambiguously establish that Multifoods had no obligation to provide medical insurance to its retirees after the CBAs expired, and therefore, plaintiffs' extrinsic evidence cannot change the result.

116 F.3d at 981. Moreover, it is of no import that the plaintiffs received written and oral communications confirming their coverage until April 2007. A provider's obligations under the plan are dictated by the plan documents themselves, and not by any ensuing informal communications. As the Second Circuit Court of Appeals stated in *Moore*,

Congress intended that plan documents and the SPDs exclusively govern [providers'] obligations under ERISA plans. This intention was based on a sound rationale. Were all communications between [providers] and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan, the plan documents and the SPDs would establish merely a floor for [providers'] future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created.

856 F.2d 488 at 492. Accordingly, plaintiffs have not established that they are likely to succeed on the merits of their claim.

Finally, given that there are no disputes over material facts, and given that plaintiffs have made no further legal

arguments, plaintiffs have not raised "sufficiently serious

questions going to the merits," which would warrant granting a

preliminary injunction.

Accordingly, plaintiff's motion for preliminary injunction

must be denied.[9]

## Defendant's motion for attorney's fees

Defendant argues that if this Court denies the preliminary

injunction, it should award to defendant attorney's fees pursuant

to ERISA. An application for attorney's fees in an ERISA case is

governed by 29 U.S.C. § 1132(g)(1).[10]

---

[9] On June 20, 2006, after the preliminary injunction motion had been fully
briefed, counsel for plaintiffs submitted a letter arguing that defendant has
violated COBRA in that it "refused to provide (1) Hope with 60 days to elect COBRA
coverage and (2) denied Collins the 45-day grace period to pay the COBRA premiums
for May and June." Plaintiffs argue that "[t]his conduct...furnishes a separate
ground for injunctive relief." It is unclear whether plaintiffs argue that the
alleged violation constitutes a separate ground for an injunction directing
defendant to continue providing benefits under the plan, or if plaintiffs seek a
separate injunction relating to the COBRA allegations.
    Plaintiff Collins states in an affidavit that despite the 45 day grace
period provided for in the SPD, on June 12, 2006, "a woman named Joanne" in the
Welfare Plan office informed him that he would have to pay for his COBRA coverage
for May and June "then and there." Defendant states, without providing a
supporting affidavit, that Joann Braun, an employee at the Welfare Plan office,
indeed spoke to Collins; however, she did not give him a due date for the payment.
In any event, plaintiff's allegation does not warrant a preliminary injunction
because he cannot show that he was irreparably harmed. Collins paid for the
coverage, and, by his own admission, will be reimbursed by his employer for the
payment.
    Plaintiff Hope states in an affidavit that on June 15, 2006, "a woman named
Joanne" in the Welfare Plan office informed him that his "45-day period for paying
the COBRA premiums had passed and so she could no longer offer [him] COBRA
coverage." Hope alleges that her actions violate the provision of the SPD which
provides a 60-day COBRA election period after termination of coverage. Defendant
responds that Joann Braun erroneously believed that Hope had 45 days to elect
COBRA. Defendant maintains that Hope has until June 23, 2006 to elect COBRA.
Because Hope can still elect COBRA, he cannot show irreparable harm.
    Accordingly, to the extent plaintiffs seek a separate injunction relating
to the COBRA allegations, that motion is denied without prejudice.

[10] 29 U.S.C. § 1132(g)(1) provides:
(1) In any action under this subchapter (other than an action described in
paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its
discretion may allow a reasonable attorney's fee and costs of action to either

> Ordinarily, the decision [to award attorney's fees] is
> based on five factors: (1) the degree of the offending
> party's culpability or bad faith, (2) the ability of the
> offending party to satisfy an award of attorney's fees,
> (3) whether an award of fees would deter other persons
> from acting similarly under like circumstances, (4) the
> relative merits of the parties' positions, and (5)
> whether the action conferred a common benefit on a group
> of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869,
871 (2d Cir.1987). "The decision of whether to award fees lies
within the discretion of the district court." *Id*.

In the present case, I conclude, based primarily on an
assessment of factors 1-3, that an award of attorney's fees is
not warranted. First, although plaintiffs have not demonstrated a
likelihood of success on the merits, it appears from the record
that they have brought the present suit in order to be able to
receive employee benefits to which they believe they are
entitled, rather than to harass defendant, as defendant suggests.
Next, plaintiffs have stated in their affidavits that they would
not be able to afford the cost of COBRA coverage, which amounts
to approximately $900 per month. I therefore find that they would
not be able to satisfy an award of attorney's fees.[11] Finally,
while an award of attorney's fees might deter others from filing
similar lawsuits, this is not a desirable result in light of
ERISA's "statutory purpose of vindicating [benefits] rights." *Id*.

party.

[11] Defendant argues that Local 1 would be able to satisfy an award of
attorney's fees; however, Local 1 is not a plaintiff in this case.

-13-

at 872.

Accordingly, defendant's motion for attorney's fees is denied.

## CONCLUSION

For the reasons stated above, plaintiffs' application for a preliminary injunction is denied and defendant's motion for attorney's fees is denied.

The Clerk is directed to transmit a copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated :    June 23, 2006
           Brooklyn, New York


By: /s/ Charles P. Sifton (electronically signed)
    United States District Judge